UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

JAMES M. THOMSEN, SR.,                                    00-CV-0280E(Sc)

                 Plaintiff,

     -vs-

COUNTY OF ERIE, NEW YORK,                                 MEMORANDUM
ERIE COUNTY SHERIFF'S DEPARTMENT,
ERIE COUNTY DISTRICT ATTORNEYS                                    and
   OFFICE,
ERIE COUNTY SHERIFF PATRICK GALLIVAN,                        ORDER[1]
ERIE COUNTY SHERIFF CHIEF
   SCOTT R. PATRONIC,
3RD OFFICER WHO BEAT PLAINTIFF,
ERIE COUNTY SHERIFF THOMAS STABELL,
ERIE COUNTY SHERIFF DETECTIVE
   CHARLES TIRONE,
ERIE COUNTY HOLDING CTR.
   SUPERINTENDENT H. McCARTHEY GIPSON,
ASSISTANT PROSECUTOR CANDACE VOGEL,
ERIE COUNTY ATTORNEY CHARLES SAWYER,
ERIE COUNTY MEDICAL CENTER,
UNNAMED MEDIA PERSONS and
CAROL ALAIMO,

             Defendants.[2]

—————————————————————————

     Plaintiff, proceeding *pro se*, commenced this action on March 31, 2000

against sixteen county defendants — twelve individually named defendants and

four Erie County departments or agencies (collectively "County Defendants") —

—————————————————————

     [1]This decision may be cited in whole or in any part.

     [2]It appears that Patronic, Stabell and McCarthey Gipson are misspelled.  The correct spelling is Patronik, Staebell and McCarthy Gipson and the Court will refer to them as such.

and WKBW Channel 7 News.  Five of the County Defendants and WKBW Channel

7 News have since been dismissed from the action and Carol A. Alaimo has been

added as a defendant.[3]   On December 28, 2000, the undersigned dismissed

plaintiff's March 31, 2000 Complaint ("Original Complaint") without prejudice for

failure to comply with the Federal Rules of Civil Procedure ("FRCvP") and

instructed plaintiff to file an amended complaint in compliance with the

requirements of the FRCvP — *viz.*, FRCvP 8(a)'s requirement that a complaint be

a "short and plain statement of the claim[s]" and FRCvP 10(b)'s requirement of

properly numbered paragraphs and separated counts ("Dec. 28, 2000 Order").[4]

(Dec. 28, 2000 Order, at 3-6.)  Plaintiff filed an amended complaint on March 28,

2001 ("First Amended Complaint"), which the County Defendants moved to

dismiss on April 17, 2001.  After plaintiff was granted several extensions in which

to file a second amended complaint — the last of which occurred pursuant to an

Order issued by the undersigned on February 12, 2003 ("Feb. 12, 2003 Order")[5] —,

plaintiff filed his Second Amended Complaint on April 29, 2003.[6]  The County

---

[3]Alaimo, however, has not been served nor has she answered.

[4]*Thomsen* v. *County of Erie*, 2000 WL 1887834 (W.D.N.Y. 2000).

[5]Subsequent to the Feb. 12, 2003 Order, on March 11, 2003, plaintiff's then-attorney, Douglas S. Cream, Esq., moved to withdraw as plaintiff's counsel, which the undersigned granted on April 25, 2003.  As a result of Cream's withdrawal from the case, plaintiff was given more time and to file and serve his second amended complaint.

[6]Plaintiff inaccurately titles his April 29, 2003 Complaint as "1st Amended Complaint." For the purposes of this Order and to avoid confusion, the Court will refer to plaintiff's April 29, 2003 complaint as his "Second Amended Complaint".

Defendants answered plaintiff's Second Amended Complaint on May 19, 2003. Plaintiff moved for partial summary judgment on April 4, 2005 and the County Defendants moved for summary judgment on May 2, 2005.  For the reasons set forth below, plaintiff's motion will be denied, the County Defendants' motion will be granted.  No cognizable claim will remain against Alaimo and plaintiff's case will be dismissed in its entirety.

Plaintiff has filed three different complaints in this action and attempts to have the allegations in all three complaints considered by the Court.  Plaintiff's Second Amended Complaint, however, replaces his first two complaints and only the allegations contained therein will be addressed herein.  "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  *Int'l Controls Corp.* v. *Vesco*, 556 F.2d 665, 668-669 (2d Cir. 1977); *see also Rodriguez* v. *N.Y. State Dept. of Corr.*, 2004 U.S. Dist. LEXIS 13769, at *8 (W.D.N.Y. 2004) (Elfvin, J.) ("[P]laintiff's amended complaint must include all of the allegations against each of the defendants named in the complaint so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.").  Thus, plaintiff's attempt to incorporate his 55-page Original Complaint and his 45-page First Amended Complaint is impermissible. The undersigned found the Original Complaint to be "so confused, ambiguous, vague and otherwise unintelligible that it can not be remedied either through a more definite statement or by striking portions of it and that the only

way to proceed is to dismiss the Complaint for failure to comply with FRCvP."
(Dec. 26, 2000 Order, at 5-6.)   Such Order also held that "[i]f the amended
complaint fails to so comply and is still of such a nature that it cannot be cured by
a motion for a more definite statement or a motion to strike, this Court will
entertain a motion by the defendants to dismiss with prejudice."   (*Id.* at 6.)
Plaintiff then filed his First Amended Complaint, which the undersigned found "is
also not in compliance with the FRCvP as it is no more intelligible than his
original Complaint."  (Feb. 12, 2003 Order, at 2 n.2.)  Plaintiff was ordered to file
and serve a second amended complaint or have his case dismissed with
prejudice.  (*Id.* at 3.)  Plaintiff then filed his Second Amended Complaint which is
the subject of the pending motions for summary judgment.

The facts are found as follows and are undisputed except where otherwise
noted.[7]  In September 1998, plaintiff was living in Niagara Falls, Canada with his
wife, defendant Carol Alaimo, and had an office on Grand Island, N.Y.  On October
28, 1998, plaintiff accessed Alaimo's electronic mail ("e-mail") to see if she was
having an affair.   Plaintiff alleges that he unintentionally discovered Alaimo's
stored, undeleted e-mails while doing routine maintenance on his computer.  He
admits to forwarding eleven e-mails to his business account for potential divorce

---

[7]As explained in detail *infra*, the Second Amended Complaint is devoid of sufficient
factual and legal allegations to maintain a cause of action.  The findings of fact are based on the
County Defendants' papers in support of their motion for summary judgment, plaintiff's motion
for partial summary judgment and, when possible, the Second Amended Complaint.

proceedings.  He claims that he and Alaimo were having marital disputes and that Alaimo was having an affair.  In an alleged attempt to save his marriage, plaintiff called Alaimo often, posted pictures of her on the internet and publicized her affair.  He claims that such activities are an exercise of his First Amendment right to free speech and are protected by spousal privilege.

In November 1998, Alaimo contacted defendant Scott R. Patronik, head of the Erie County Sheriff's Department Computer Crimes Division, to inform him that plaintiff had accessed her e-mail without permission.  To that end, Alaimo executed a sworn statement on November 2, 1998.  Plaintiff claims that Alaimo had used her position with the press to manipulate the police; in particular, plaintiff claims that the County Defendants agreed to investigate plaintiff in exchange for receiving positive press coverage.  Patronik investigated Alaimo's complaint, found evidence in support thereof and contacted Candace Vogel, an Assistant District Attorney for Erie County.  Patronik and Vogel believed that plaintiff may have committed the felony of Eavesdropping in violation of New York Penal Law ("NYPL") §250.05.  As such, subpoenas were issued and served. Plaintiff claims that he offered to help in the investigation, but was denied said opportunity.  The subpoenas and investigation discovered that Alaimo's e-mails were obtained by a computer located at plaintiff's Grand Island office.

A search warrant was issued on December 11, 1998 to search plaintiff's Grand Island office, where the Erie County Sheriff's Department found Alaimo's

e-mails on plaintiff's computer. Plaintiff claims that the County Defendants exceeded the time limits and scope of the search warrant. An arrest warrant for plaintiff was issued on December 18, 1998. Plaintiff claims that the arrest warrant was based on false testimony and tampered evidence. Plaintiff knew of the arrest warrant, was represented by counsel, avoided the authorities and was suicidal. Plaintiff swallowed mercury just prior to his April 2, 1999 arrest in East Greenbush, N.Y. Plaintiff claims that swallowing mercury was not a suicide attempt.

On April 2, 1999 — the day of plaintiff's arrest —, Patronik and Detective Charles Tirone of the Erie County Sheriff's Department went to the Rensselaer County Correctional Facility ("RCCF") to pick up plaintiff and bring him to the Erie County Holding Center ("ECHC") in Buffalo to be arraigned. Plaintiff told Patronik and Tirone upon their arrival at the RCCF that he would die soon, but did not tell them that he had swallowed mercury. Patronik and Tirone, therefore, searched plaintiff and found nothing. Plaintiff claims that, on the drive to the ECHC from the RCCF, he complained about the handcuffs, lost consciousness and generally felt ill. He, moreover, alleges that Patronik and Tirone attempted to kidnap and transport plaintiff to Canada, but Canadian officials prevented such from occurring. Plaintiff claims that Patronik and Tirone intentionally attempted to make plaintiff feel very uncomfortable and ignored his pain and illnesses. Plaintiff allegedly requested medical attention.

After arriving at the ECHC, plaintiff refused to exit the car and was pulled from it.  Plaintiff claims that said pulling injured his left hip.  Plaintiff further alleges that Patronik and Tirone battered and kicked him causing severe mental and physical injuries.  The County Defendants deny these allegations.

Patronik and Tirone turned plaintiff over to the custody of the ECHC. Plaintiff told an ECHC employee that he had swallowed mercury and was immediately taken to Erie County Medical Center ("ECMC").  Plaintiff was at ECMC's medical unit from April 3 to April 14, 1998 for, *inter alia*, post mercury ingestion, suicidal ideation, chest pain and hypertension.  From April 14 to April 21, 1998, plaintiff was admitted to the psychiatric unit of ECMC.  Plaintiff has a history of depression and had injured his hip in a prior car accident.  During this time, plaintiff was arraigned by Judge Patrick Carney of the Buffalo City Court on the eavesdropping charges.  Upon his release from ECMC, plaintiff made bail and did not return to the ECHC as an inmate.  Plaintiff claims that he was denied adequate medical care, was imprisoned at ECMC and was not able to make a phone call until a couple of days after being first taken to ECMC and that his mental health evaluations at ECMC were falsified.

On April 22, 1998, the District Attorney's Office reduced the charges against plaintiff from Eavesdropping under NYPL §250.05 to Aggravated Harassment in the Second Degree under NYPL §240.30(1).  Plaintiff's attorney did not object to the reduction of the charges and requested the filing of new accusatory

instruments, which were filed with the Buffalo City Court and consisted of an Accusatory Instrument and a Supporting Deposition signed by Alaimo.  Plaintiff moved to suppress that which was discovered pursuant to the December 11, 1998 search warrant and such was denied.  Plaintiff submitted two Notices of Claim upon ECMC and Erie County on May 10, 1999 attempting to allege essentially what he attempts to allege in this action.  On May 10, 2000, plaintiff accepted an Adjournment in Contemplation of Dismissal under NYPL §170.55 and commenced this action.

Summary judgment may be granted if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FRCvP 56(c).  There is no genuine issue for trial unless the evidence offered favoring the non-moving party would be sufficient to sustain a jury's verdict for that party.  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, when reasonable minds could not differ as to the outcome of an issue, summary judgment is appropriate on that issue.  *Id.* at 251-252.  The moving party initially bears the burden of showing that no genuine issue of material fact is present but the opposing party must then "set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 250.  If the non-moving party fails to establish, after a reasonable opportunity for discovery, the existence of an element essential to that party's claim and on which it will bear the burden of proof at trial, summary judgment is appropriate because such failure to

establish an essential element of the case renders all other facts immaterial.  *See*

*Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986).

When assessing the record in making a summary judgment determination,

a court must view all ambiguities and factual inferences in the light most

favorable to the non-moving party.  *Adickes* v. *S.H. Kress & Co.*, 398 U.S. 144, 157

(1970).  However, the non-moving party "cannot defeat the motion by relying on

the allegations in his pleading, or on conclusory statements, or on mere assertions

that affidavits supporting the motion are not credible."  FRCvP 56(e); *Gottlieb* v.

*County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

Plaintiff's Second Amended Complaint makes a series of factual allegations,

states several times that he is incorporating the allegations of his previous two

complaints, (Second Am. Compl. ¶¶40, 41, 197, 199-201) and, almost randomly,

makes a laundry list of claims or causes of action.  Plaintiff states that the

allegations "constitutes [*sic*] a RICO cause of action" and that "[t]he predicate

acts are wire fraud (multiple counts), *** Obstruction of justice, Violation of Due

Process, Constitutional Rights, Oaths of Office, policy and procedures, Medical

Malpractice, Illegal Search and Seizure of person and property, assault, perjury,

and other acts detailed in other filings in this case *** and attempted

kidnapping", but does not allege the elements of any of these claims or how the

allegations constitute the listed violations.  (*Id.* ¶¶192, 196-198.)  Plaintiff

continues: "The actions of defendants constitute causes of action for violations of

the civil rights of plaintiff, conspiracy to violate his civil rights, obstruction of justice, defamation, and RICO as more fully set forth in his previous complaint(s) in this case." (*Id.* ¶200.)

As held *supra*, plaintiff cannot incorporate his two previous complaints in his Second Amended Complaint because such defeats the purpose of an amended complaint and would violate the Court's Dec. 28, 2000 and Feb. 12, 2003 Orders. The undersigned dismissed the Original Complaint (*see* Dec. 28, 2000 Order) and found that the First Amended Complaint was as unintelligible as the Original Complaint and would be dismissed with prejudice if plaintiff did not submit a Second Amended Complaint. (*See* Feb. 12, 2003 Order.) Plaintiff's Original and First Amended Complaint are so confusing and vague "that it is impossible for this Court — not to mention the defendants — to determine which causes of action plaintiff is actually attempting to bring against each specific defendant and upon what factual basis." (Dec. 26, 2000 Order, at 5.) Plaintiff's Second Amended Complaint is no less confusing or vague. This is plaintiff's third opportunity to meet his pleading requirements under the FRCvP and the third time that he has failed at such. Although plaintiff states in his Second Amended Complaint that he "seeks leave to further amend this complaint" (Second Am. Compl. ¶6), such will not be granted by this Court. *See, e.g., De Jesus* v. *Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (upholding district court's denial of plaintiff's fifth attempt to amend his complaint because he had been given "ample prior

opportunity to allege a claim"); *Armstrong* v. *McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) ("Because the complaint whose allegations were being considered by the district court was plaintiffs' second amended complaint, the district court did not abuse its discretion in refusing to give plaintiffs a fourth attempt to plead.").  The Court has given plaintiff ample opportunity to amend his complaint, comply with the FRCvP and sufficiently allege a claim for which relief may be granted.  Any more opportunities — *viz.*, a fourth chance — would simply waste the Court's and defendants' time.

In deciding whether plaintiff has sufficiently pled facts in support of his claims, the Court looks to the elements of each claim.  *See In re Scholastic Corp. Sec. Liti.*, 252 F.3d 63, 69 (2d Cir. 2001).  Simply stating, for example, that his constitutional rights were violated is not asserting any element of a claim.  To make a claim to which defendants can respond and on which the Court can adjudicate, plaintiff must assert which rights were violated, how and when they were violated and who violated them in accordance with and guided by statutory and common law principles defining what constitutes such violations.  Plaintiff does no such thing.  Instead, in a confusing and incoherent manner, plaintiff provides his interpretation of the events and claims that they amount to a laundry list of violations for which legal recourse exists.  The Second Amended Complaint does not list which defendant is liable for each allegation, does not explain how each defendant is liable and does not allege the elements of any allegation.

Plaintiff has been warned twice that such is insufficient to assert a valid cause of action and his Second Amended Complaint, therefore, will be dismissed with prejudice.

Although plaintiff does not sufficiently allege any claim for which relief may be granted, the Court will briefly address what it appears plaintiff is attempting to allege and explain why those claims also fail.[8]  It appears that plaintiff is claiming (1) a violation of the Racketeering Influenced and Corruption Organizations Act ("RICO"), 18 U.S.C. §1961 *et seq.*, (2) violations of 42 U.S.C. §1983, including malicious prosecution and false arrest, (3) illegal search and seizure, (4) denial of medical care and (5) a violation of spousal privilege.  All these claims, as far as the Court can tell, are alleged against all of the County Defendants and no such allegations are made against Alaimo.

Racketeering activity includes the commission of specified state law crimes, conduct indictable under various provisions within Title 18 of the U.S. Code and certain other federal offenses "committed for the purpose of *financial gain*".  18 U.S.C. §1961(1) (emphasis added).  For a valid RICO claim, "plaintiff must allege (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962." *Pinnacle Consultants, Ltd.* v. *Leucadia Nat'l Corp.*, 101 F.3d 900, 903-904 (2d Cir. 1996)

---

[8]The Court is basing its hypothesis of that which plaintiff may be alleging on plaintiff's three complaints and his motion for partial summary judgment.

(citation omitted).  To state a violation of Section 1962, a plaintiff "must allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Moss* v. *Morgan Stanley Inc.* 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C. §1962(a)-(c)).  Plaintiff, as a matter of law, cannot establish — nor has he alleged — that the County Defendants engaged in any "racketeering activity".  Assuming *arguendo* that the County Defendants engaged in conduct listed in Section 1961(1), plaintiff cannot show that said engagement was committed for the purpose of financial gain constituting "racketeering activity". 18 U.S.C. §1961(1).  Plaintiff asserts that the County Defendants' alleged conduct was done for the purpose of receiving favorable media attention.  No desire for financial gain was alleged nor can it be as the County Defendants did not financially benefit from any of the alleged conduct.  Accordingly, plaintiff's RICO claim fails as a matter of law.

Plaintiff alleges that the County Defendants violated his constitutional rights and are liable under 42 U.S.C. §1983.[9]  Section 1983 provides a civil claim

---

[9]42 U.S.C. §1983 states:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the
(continued...)

for damages and "itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas* v. *Roach*, 165 F.3d 137, 142 (2d Cir. 1999). "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen* v. *County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citation omitted). In the Second Circuit, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon* v. *Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). Personal involvement can be showing by evidence that:

> "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference *** by failing to act on information indicating that unconstitutional acts were occurring."

---

[9](...continued)
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

*Back* v. *Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (citation omitted).  Plaintiff cannot seek injunctive relief as there are no continuing violations; thus, his only recourse is money damages.

Plaintiff does not allege anything that could amount to personal involvement on the parts of, *inter alia*, defendants Patrick Gallivan, Thomas Staebell and McCarthy Gipson.  First, the Second Amended Complaint only states that "Stabell [*sic*] denies professional standards investigation and review". (Second Am. Compl. ¶185.)  There is no allegation of a constitutional violation in which Staebell was involved.  As to defendants Gallivan and Gipson, plaintiff alleges that one or both of them edited evidence, placed plaintiff on the "Ten Most Wanted List" and photographed plaintiff while in ECMC.  (*Id.* ¶¶164, 177, 179, 180.)  None of these allegations amounts to a constitutional violation nor does plaintiff contend such.  No claims, therefore, exist against Gallivan, Staebell and Gipson.

Section 1983 does not abrogate "immunities well grounded in history and reason".  *Imbler* v. *Pachtman*, 424 U.S. 409, 418 (1976) (citation and internal quotations omitted).  One such immunity from suit is the absolute immunity afforded prosecutors. *See, e.g., DiPilato* v. *Village of Holley*, 2004 U.S. Dist. LEXIS 13831, at * 7-*8 (W.D.N.Y. 2004).  Defendants Candace Vogel and Charles Sawyer are entitled to absolute immunity as they are prosecutors who functioned as advocates for the state in matters that were "intimately associated with the

judicial phase of the criminal process". *Imbler,* at 430-431 ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [Section] 1983."); *see also Dory* v. *Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("Absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate."). Vogel and Sawyer are thus immune from this suit.

A municipality or other local government body cannot be held liable under Section 1983 solely based on the alleged acts of its employees. *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). It is only when a municipality's "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [alleged] injury". *Ibid*. Plaintiff does not claim a "relevant practice [that] is so widespread as to have the force of law" with regard to any of his Section 1983 allegations. *See Bd. of County Comm'rs* v. *Brown*, 520 U.S. 397, 404 (1997). Thus, plaintiff's claims of constitutional violations against Erie County, Erie County Sheriff's Department and Erie County District Attorney's Office will be dismissed as a matter of law.

The only remaining defendants are Patronik and Tirone. Police officers sued in their individual capacity are entitled to qualified immunity from suit insofar as it was objectively reasonable for them to believe that their acts did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson* v. *Creighton*, 483 U.S. 635, 638-640 (1987) (finding

that qualified immunity is an immunity that a government actor enjoys if, at the time of the challenged conduct, it was objectively reasonable for such actor to believe that his conduct did not violate plaintiff's clearly established constitutional rights).   Patronik's and Tirone's conduct was "objectively reasonable" because they had probable cause to search plaintiff's Grand Island office and to arrest plaintiff.   Qualified immunity shields police "officers from liability for actions they took within the authority ostensibly conferred by the arrest warrants." *Simms* v. *Village of Albion, N.Y.*, 115 F.3d 1098, 1106 (2d Cir. 1997) ("A police officer who relies in good faith on a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by qualified immunity from personal liability for damages.").   Similarly, the issuance of a search warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause. *Golino* v. *City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (citations omitted).   Thus, Patronik and Tirone are immune from suit in that their acts were in accordance with search and arrest warrants.   Moreover, inasmuch as Patronik and Tirone had probable cause to arrest plaintiff,[10] his claims for false arrest, false imprisonment and malicious prosecution fail as a matter of law and will be dismissed.   *See, e.g.,*

---

[10]Plaintiff challenged the search of his office in state court and his challenge was denied.

*Curry* v. *City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) ("Probable cause is a complete defense to a cause of action for false arrest.") (citation and internal quotations omitted); *Berger* v. *Schmitt*, 2003 U.S. Dist. LEXIS 10000, at *13 (W.D.N.Y. 2003) (Elfvin, J.) (same).

Plaintiff, it appears, also attempts to argue that, because he was not prosecuted, there was no probable cause to investigate and arrest him. This argument fails as a matter of law. When making an arrest, an officer "need not also believe with certainty that the arrestee will be successfully prosecuted." *Curley* v. *Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (citation omitted); *United States* v. *Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) ("The quantum of evidence required to establish probable cause to arrest need not reach the level of evidence necessary to support a conviction ***."). Thus, any claim that the officers lacked probable cause to arrest him because the charges against plaintiff were eventually lowered and/or dismissed is unfounded in the law. *See, e.g., Berger,* at *9 n.8 ("[T]o the extent that [plaintiff] claims that [the] officer *** lacked probable cause to arrest because the charges against [plaintiff] were eventually dismissed, such position is unfounded in the law."). Furthermore, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher* v. *Hayes*, 434 U.S. 357, 364 (1978). Thus, any claim plaintiff makes

- 18 -

based on the fact that he was ultimately charged for a lesser crime is invalid. Similarly unfounded is plaintiff's claim that he was denied his right to a grand jury indictment.  There is no right to a grand jury indictment for a New York State misdemeanor charge.  *See, e.g., LanFranco* v. *Murray*, 313 F.3d 112, 118 (2d Cir. 2002).

It appears as though plaintiff is also attempting to allege that the warrants were procured in a fraudulent manner.  Fraud must be alleged with particularity. FRCvP 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  To satisfy FRCvP 9(b), the Second Amended Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Bhandari* v. *Bittner*, 2004 WL 2284582, at *2 (W.D.N.Y. 2004) (citations and internal quotations omitted).  "FRCvP 9(b) is based on a need to provide a defendant with fair notice of the basis of a plaintiff's claim so as to protect a defendant's reputation from groundless accusations of fraud and to prevent strike suits brought for settlement value; therefore, plaintiff is required to reveal the specified information within his control." *Ibid*.  The Second Amended Complaint does not satisfy FRCvP 9(b)'s requirements and any allegation of fraud cannot stand.

Plaintiff also claims that the County Defendants exceeded the scope of the search warrant by continuing the search past 9 p.m.  There is no constitutional requirement that search warrants be completed before 9 p.m. and the officers followed the requirements of the search warrant by commencing the search prior to 9 p.m.  Plaintiff, from what the Court can understand, also alleges some sort of violation because the County Defendants searched him before taking him to the ECHC and, on the drive to the ECHC, kept the windows open and drove quickly.  Plaintiff, however, told Patronik and Tirone that he was going to die and he allegedly was not feeling well on the drive.  As such, Patronik's and Tirone's actions were reasonable.

Next, plaintiff alleges that he was denied medical care.  This, however, is clearly not the case as he was placed in ECMC immediately after the County Defendants became aware of plaintiff's medical needs — *viz.*, that he had swallowed mercury.  Finally, plaintiff asserts some sort of spousal privilege as to evidence seized.  Plaintiff's assertion again is invalid because spousal privilege only exists as to *private* communications where there are no third parties.  *Pereira* v. *United States*, 347 U.S. 1, 7 (1954).  Plaintiff admits that community members — whether that is one person or many people — were told about and involved in the communications.[11]  Plaintiff has thus waived any right to spousal privilege.

---

[11]In fact, plaintiff ensured that the man with whom Alaimo was having an affair was privy to the communications.

Furthermore, privilege does not extend to a marriage "so obviously destroyed as the one here."  *See, e.g., United States* v. *Fisher*, 518 F.2d 836, 841 (2d Cir. 1975). Thus, however plaintiff attempts to assert spousal privilege, it is void.

Accordingly, it is hereby **ORDERED** that the County Defendants' Motion for Summary Judgment is granted, that plaintiff's Motion for Partial Summary Judgment is denied, that plaintiff's claims are dismissed as against all defendants and that the Clerk of the Court shall close this case.

DATED:      Buffalo, N.Y.

            January 26, 2006


                              _____
                                   /s/ John T. Elfvin
                              JOHN T. ELFVIN
                              S.U.S.D.J.